*342 OPINION OF THE COURT
Shanley N. Egeth, J.
THE ACTION
This is an action seeking damages for defamation from the New York Daily News and one of its reporters who authored a news article concerning plaintiff, allegedly based upon court files involving litigation between plaintiff and the New York City Board of Education.
FACTS
The subject article contained the headline “Sue No-Show Teacher for 61G In Pay Given Out by Mistake”. The text reads as follows:
“The Board of Education paid a no-show teacher for three years and nine months and now is suing to get the $61,282.90 back.
“The board doled out about $1,346 a month for 45 months before noticing its mistake, according to papers filed in Manhattan Supreme Court last week. The beneficiary was Albert DeLuca, 64, of 1401 73rd Street, Bensonhurst, Brooklyn.
“DeLuca was a teacher of dental mechanics from George Westinghouse Vocational High School, Brooklyn. He was beaten up by a student on October 31, 1971. He went on disability leave for a month with injuries to his right side and head, and then was transferred to what is called health leave, effective November 15, 1971.
“His pay checks kept coming until August 31, 1975, according to Court papers. That was when someone at the board realized that DeLuca was not entitled to any pay while on health leave. DeLuca then retired.
“He Is Called Liable
“The board’s Court papers said, ‘The payments were made in violation of rules, regulations and bylaws of the (Board of Education) and were in violation of law, and therefore (DeLuca) is liable for the salary paid him for November 15, 1971 to August 31, 1975.’
“DeLuca through his attorneys, James Brady and James Sandner, sought to have the board’s suit thrown out of Court on the ground that the statute of limitations had run *343 out on collecting the back pay. However, Supreme Court Justice Nathaniel Helman ruled that the board’s belated attempt to recoup the misspent money came just in time.
“Helman did not rule on the merits of the board’s case. These remain to be hashed out in the Courts, probably for the next few years.
“No mention was made in the Court papers as to what, if anything, ever happened to the student who beat up De-Luca.”
In essence, plaintiff contends that the use of the characterization “No-Show” teacher constitutes actionable defamation. Plaintiff attempts to raise other minor inaccuracies in the text of the article, but this court determines that they are so minor, insignificant and frivolous as to be wholly undeserving of serious consideration or comment.
PRIOR MOTION AND ITS EFFECT
Defendants previously moved for summary judgment upon the sole ground that the publication was absolutely privileged as a report of a judicial proceeding and, therefore, protected by the provisions of section 74 of the Civil Rights Law. That motion was denied by Mr. Justice Greenfield of this court. Justice Greenfield noted that the term “ ‘no-show’ is generally understood to connote a person who is able to work but fails to show up” and then concluded “it cannot be said as a matter of law that the average reader would not view Mr. DeLuca as, at a minimum, disreputable, upon reading the article”. He then determined that “[t]here are no facts in the Court papers cited by the authors which support such a characterization” (referring to the term no-show), and that “[sjummary judgment is inappropriate here since an average reader could well have pictured plaintiff, the subject of the story, as a person who failed to show up for work without justification and who was somehow able to obtain moneys to which he was not entitled”.
Under the doctrine of law of the case, this court is bound by the determination of Mr. Justice Greenfield, that a triable issue of fact exists as to whether the use of the term “no-show” in the article is defamatory and as to whether the article constitutes a fair report of the judicial proceed *344 ings. This court will therefore exclude any consideration of these issues from its determination as to the issues raised on the instant motion.
In so doing, however, the court will not ascribe to the earlier decision a scope beyond its actual holding as plaintiff would appear to be now urging this court to do. The actual necessary determinations contained in the decision upon which the holding is based are clearly binding upon this court as law of the case.
The prior decision determined , that there was a triable issue of fact as to whether the article was an accurate report of a judicial proceeding, because the term “no-show” was susceptible to the defamatory meaning discussed therein. The meaning of a term is normally a jury question (see, e.g., November v Time, Inc., 13 NY2d 175, 179; Mencher v Chesley, 297 NY 94, 100; Morrison v Smith, 177 NY 366, 369; Schermerhorn v Rosenberg, 73 AD2d 276, 283; McCullough v Certain Teed Prods. Corp., 70 AD2d 771). Any discussion beyond this as to the meaning of the term went beyond the issue required to be adjudicated, and, while instructive, are not dispositive of the issues before this court.
Moreover, that decision merely decided that defendants were not entitled to summary judgment based upon one absolute privilege afforded by section 74 of the Civil Rights Law. It in no way precludes this court from deciding whether summary judgment is appropriate on any other grounds.
INSTANT MOTION
Defendant again moves for summary judgment claiming separate entitlement to the relief upon each of the following grounds:
A. The article is protected as a neutral report of newsworthy statement.
B. Plaintiff is a public official; therefore, he has the burden of showing actual malice on the part of the defendants, and he has failed to meet it.
C. Plaintiff has not met its burden of showing that this article, concerning a matter of public interest, was published in a grossly irresponsible manner.
*345 D. The article is protected because the expressions complained of are pure opinion and therefore not actionable, and they constitute privileged fair comment on the events reported.
In libel and slander actions where cherished First Amendment freedoms are involved, our courts have been especially sensitive to see that summary judgment be granted if evidentiary facts sufficient to raise a triable issue of fact are not adduced (see Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 384, cert den 434 US 969; James v Gannett Co., 40 NY2d 415; Chapadeau v Utica Observer-Dispatch, 38 NY2d 196, 200; Trails West v Wolff, 32 NY2d 207, 221; Gilberg v Goffi, 21 AD2d 517, 527, affd 15 NY2d 1023). As a matter of fact, it would appear that “[sjummary judgment is the rule, not the exception in defamation cases.” (Unification Church v Harper & Row, Publishers, 101 Misc 2d 30, 34 [Greenfield, J.]; Guitar v Westinghouse Elec. Corp., 396 F Supp 1042, 1053, affd 538 F2d 309; Salcedo v El Diario Pub., 5 Med L Rptr 2308, 2309; cf. Greenberg v CBS, Inc., 69 AD2d 693, 700.) In the recent Court of Appeals case Karaduman v Newsday, Inc. (51 NY2d 531, 545), Judge Gabrielli stated: “Indeed, we must not be reluctant to apply the ordinary rules governing summary judgment in libel cases such as this since ‘[tjhe threat of being put to the defense of a lawsuit *** may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself ’ ”. In opposing this motion, plaintiff is required to meet the burden of adducing sufficient facts to raise a triable issue (e.g., Freedman v Chemical Constr. Corp., 43 NY2d 260; Shaw v Time-Life Records, 38 NY2d 201, 207).
DISCUSSION
Each of the defendants’ contentions will be separately discussed and disposed of.
A. REPORT ON NEWSWORTHY EVENT
Defendants argue that the publication is protected as a neutral report of newsworthy statements. The applicable rule of law with regard to this privilege has been expressed in substance in the following manner. If the mere fact that a statement is made is itself newsworthy, then the report *346 ing of that statement by the press is protected expression, regardless of whether the statement is defamatory and false, and the press is not bound to verify the truth of the statement. (Greenbelt Pub. Assn. v Bresler, 398 US 6, 12, 13; Edwards v National Audubon Soc., 556 F2d 113, cert den sub nom. Edwards v New York Times Co., 434 US 1002; Orr v Lynch, 60 AD2d 949, affd 45 NY2d 903.) Summary judgment cannot be granted by this court upon this ground in the instant case. The prior decision of Mr. Justice Greenfield has pre-empted this issue in its clear holding that there was a triable issue of fact as to whether the article was a fair report of the statements contained in the judicial proceedings.
Defendants, in their scholarly brief, accurately point out that the privilege to report judicial proceedings and the privilege to report newsworthy statements are not identical, each having its own origin and purpose. The first insures the truly public character of public records and proceedings (cf. Cox Broadcasting Corp. v Cohn, 420 US 469, 491-492), while the second guarantees that the public will be informed about newsworthy contentions (see Edwards v National Audubon Soc., supra, p 120). They argue that the prior holding that the term “no-show” could not be said, as a matter of law, to accurately report the judicial proceedings as a whole, does not preclude a finding that it accurately reports the board’s allegations. The court cannot accept this conclusion although it does agree with the postulation of applicable law.
The prior decision of Justice Greenfield held that a question of fact existed as to the defamatory nature of “no-show” and that its use by the author might not be justified by the record of the judicial proceedings. If this were so determined at trial, the use of the term “no-show” could not constitute a neutral report of a statement by the board of education. Summary judgment upon this ground must be denied. The issue of the defamatory nature of the term cannot be resolved without a trial.
B. public official privilege
Defendants also contend that the article is protected because plaintiff as a public school teacher is a public official, and therefore actual malice must be demonstrated *347 to meet the applicable standard of New York Times Co. v Sullivan (376 US 254). They argue that since plaintiff has not adduced any facts to create a triable issue of fact as to actual malice on the part of defendants, summary judgment must be granted on this ground.
The question as to whether or not a public school teacher is a public official is an intriguing one not yet definitively judicially determined in New York. Courts in other jurisdictions have come to varying conclusions on this question. (See Johnston v Corinthian Tel. Corp., 583 P2d 1101 [Okla; public official]; Basarich v Rodeghero, 24 Ill App 3d 889 [public official]; Franklin v Hodge, 5 Med L Rptr 1977 [Cal; not public official].)
Although the decision of the Court of Appeals in Chapadeau v Utica Observer-Dispatch (38 NY2d 196, supra) involved a public school teacher as plaintiff, it cannot be stated that the court actually resolved the issue. In lieu of determining the case simply on the public official privilege ground, the Court of Appeals utilized the opportunity to formulate a new standard of liability to a private individual where the article concerns a matter of public importance. At first glance it might appear that the court implicitly held that the teacher was a private individual, since, unless this were the case, it would not have been necessary to create a new standard of fault for a private individual. A reading of the memorandum opinion of the Appellate Division case (45 AD2d 913) strongly suggests that a holding that the teacher was not a public official was implicit. However, the Appellate Division decided the case under the pre-Gertz standards of Rosenbloom v Metromedia (403 US 29), which applied the actual malice test to a private individual in the context of a matter of public interest. Therefore, any distinction between public official and private individual was of minimal importance.
On the other hand, it may well be argued that the Court of Appeals simply did not decide the issue of whether the teacher was a public or private figure, because it was able to dispose of the case by determining that under the new lesser standard of care which it created, the defendant was nevertheless entitled to judgment regardless of plaintiff’s status. Since the plaintiff could not meet the lesser “gross *348 irresponsibility” test, he surely could not meet the more stringent “actual malice” test.
Although this court might be tempted to determine the issue that a school teacher performing the essential duties of that position is engaged in an endeavor of apparent public importance and interest so as to warrant definitional characterization as a public official, it cannot do so in the instant case. Plaintiff in this case was no longer a school teacher performing the duties of the position at the time of occurrence of the matters reported. The rationale of the cases holding a teacher to be a public official is founded upon a recognition of a valid public concern and interest in the qualifications and quality of performance of persons performing the vital and sensitive teaching function. Plaintiff herein was already in the process of retiring as a teacher. The issues in the article did not relate to the qualifications or performance of his duties as a teacher. They dealt rather with his acceptance of health leave benefits for which there was no entitlement. This situation could involve any public employee in any department, including many employed at levels and performing functions which clearly would negate any possibility of public official status.
Under these circumstances, the public official privilege is clearly inapplicable to this action. Summary judgment may not be granted to the defendants on this ground.
C. CHAPADEAU TEST — GROSS IRRESPONSIBILITY
In Gertz v Robert Welch, Inc. (418 US 323, 347), the United States Supreme Court held that, where a public official or public figure was not involved, the States were free to develop their own criteria for defamation liability as long as they did not impose liability without fault. Subsequent thereto in Chapadeau v Utica Observer-Dispatch (38 NY2d 196, supra), the Court of Appeals held that, where the subject matter is of public interest, in order for a private individual plaintiff to recover for a defamation, such plaintiff must show “that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.” (38 NY2d, at p 199.)
*349 In the instant action, this court has already determined that plaintiff was not a public official. There can be no question but that the subject newspaper article involved a matter of public interest. In this case, the plaintiff does not claim “gross irresponsibility” as to the general research and procedures utilized in the preparation and publication of the article. There is no refutation of the allegation that the author read the entire case file which is the subject of the article, and a related additional case file. Nor has there been any contradiction of the claim that prior to writing the article, he contacted the board of education, the school in which plaintiff worked, and he attempted to speak to plaintiff’s attorney, the sole ground upon which plaintiff’s claim of “gross irresponsibility” is based is the claimed unjustified use of the words “no-show”.
Plaintiff’s contention is legally untenable. The fact that the phrase might be understood to be, or determined after trial to be, defamatory, does not preclude a determination that the action of the reporter in using it in the over-all context of this article was not grossly irresponsible. This is especially true in this case when consideration is given to the nature of the research undertaken and the further fact that the article itself contained a full and substantially accurate statement of those actual facts which would enable a reader to understand the sense and meaning of the term “no-show” in the article. The text of the article clearly states that plaintiff ceased teaching after receiving injuries from a student assault. It is clear that its focus was on the irresponsibility of the board of education, which admittedly paid substantial sums of money to a person not entitled to the receipt thereof, and who was undisputedly not present in the classroom during the extended period of time over which the moneys were paid. The article deals with acceptance of benefits during a period of nonentitlement, but it in no way alleges or implies that plaintiff was capable of working during the time.
The mere fact that in writing up his carefully researched findings, the author used a term which may be understood in varying ways, does not constitute gross irresponsibility. This is to be determined rather by the care and reasonableness of research, investigation and writing efforts.
*350 The decision of the Court of Appeals in Chapadeau v Utica Observer-Dispatch (supra, p 200) makes this clear. Even more explicit is the following language of Mr. Justice Greenfield in a different unreported case (Revici v New York News, Supreme Ct, NY County, No. 2065/73, May 20, 1977, Greenfield, J.): “Research can continue endlessly, but accepted standards of journalism require neither exhaustive research nor painstaking judgments. Newspapers, and reporters, have the right to be wrong so long as they are not guilty of not checking their facts at all, making gross distortions of the record or jumping to totally unwarranted conclusions. The entire purpose of affording scopé and latitude in the reporting of public issues is to stimulate thought, discussion, investigation and change.”
Plaintiff at bar has adduced no evidentiary facts which would even suggest the possibility of a triable issue of fact as to whether the defendant was grossly irresponsible in the preparation and publication of the article in question. Plaintiff merely asserts that the use of the term “no-show” constitutes gross irresponsibility. This is clearly not so. Summary judgment must thus be granted. As to the publisher, it should also be noted parenthetically that it had no duty to independently research the article. It was entitled to rely on the work of a reporter of proven reliability (see, e.g., Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 382-383, supra; Salcedo v El Diario Pub. Co., 5 Med L Rptr 2308, 2311, supra; Karaduman v Newsday, Inc., 51 NY2d 531, supra).
D. OPINION
Defendants argue that the publication complained of is nonactionable upon the additional ground that the use of the term “no-show” therein constitutes a constitutionally protected expression of opinion. The protection is derived from the principle that “Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.” (Gertz v Robert Welch, Inc., 418 US 323, 339-340.)
Even if a libel plaintiff is harmed by the sting of a harsh, and perhaps unjustified opinion, he has no cause of action *351 in New York. “Opinions, false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions, provided that the facts supporting the opinions are set forth.” (Rinaldi v Holt, Rinehart & Winston, supra, p 380; see, also, Maule v NYM Corp., 76 AD2d 58; Edwards v National Audubon Soc., 556 F2d 113, 121, supra; Rand v New York Times Co., 75 AD2d 417.) Since opinions are merely ideas, whose truth may be debated but cannot be denied, the absolute constitutional protection is not lost or diminished even if the opinion is unjustified or unreasonable. As stated by the Rinaldi court (supra, pp 380-381) “Plaintiffls] may not recover from defendants for simply expressing their opinion *** no matter how unreasonable, extreme or erroneous these opinions might be.”
“Whether a particular statement constitutes fact or opinion is a question of law.” (Rinaldi v Holt, Reinhart & Winston, 42 NY2d 369, 381, supra.) Cases defining the privilege classify as protected opinion those statements and concepts “whose content is so debatable, loose and varying, that they are insusceptible to proof of truth or falsity.” (Buckley v Littell, 539 F2d 882, 894, cert den 429 US 1062.) Applying this standard, the Second Circuit noted: “An assertion that cannot be proved false cannot be held libelous. A writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be.” (Hotchner v Castillo-Puche, 551 F2d 910, 913, cert den sub nom. Hotchner v Doubleday & Co., 434 US 834.)
The term no-show, as used in the context of this article, is such an expression of opinion, this is particularly evident when compared with, for example, the published allegations in Rinaldi v Holt, Reinhart & Winston (supra), that a State Supreme Court Judge was “‘incompetent’”; that the well-known columnist in Buckley v Littell (supra) was a “‘fascist’” or “‘fellow-traveler’”; that the plaintiff in Hotchner v Castillo-Puche (supra), was a “‘toady’”, “‘hypocrite’” and an exploiter of Ernest Hemingway’s reputation; that the plaintiff sportswriter in Maule v NYM Corp. (supra), maintained his beat because he was the managing editor’s “‘longtime drinking companion’”; that *352 the agent in Rand v New York Times Co. (supra) “ ‘f —d over’ ” or “ ‘screwed’ ” his client; that the scientist plaintiffs in Edwards v National Audubon Soc. (supra) were “ ‘liars’ All of these were held to be absolutely protected opinion.
In the instant case, the term “no-show” was used to characterize plaintiff in the context of the lawsuit in which he was involved. The characterization is not susceptible to proof of truth or falsity; its definition is subject to debate, as was implicitly held by Justice Greenfield in deciding the prior motion. It could mean simply that plaintiff did not come to work; that he voluntarily absented himself; that he was involuntarily absent; that his absence was justified but his retention of salary was not; or even that both his absence and his retention of salary was justified. As stated by the Buckley court (539 F2d 882, 892, supra), “It can be seen, the moment that we are involved in ascertaining what meaning [defendant’s] statement purports] to convey, that we are in the area of opinion as opposed to factual assertion.”
“Only when the derogatory opinion * * * is issued upon a concealed set of facts which the speaker implies would confirm his opinion, is it actionable.” (Rand v New York Times Co., 75 AD2d 417, 422, supra; Hotchner v CastilloPuche, supra). The term no-show as used in the article sued upon is applied to the plaintiff for the factual reasons fully set forth therein. As to the question of an expressed factual basis for the opinion, this case is indistinguishable from the circumstances disposed of by the Rinaldi court in the following language (42 NY2d 369, 381, supra): “Both opinions, even if falsely and insincerely held, are constitutionally protected, if the facts supporting the opinion are set forth. Here, Newfield set forth the basis for his belief that plaintiff is incompetent and should be removed. Based upon the facts stated and public debate provoked by the statements, each reader may draw his own conclusion as to whether Newfield’s views should be supported or challenged.”
In this case, the article clearly states that plaintiff was injured in an attack by a student, was put on disability leave, was then transferred to health leave, and thereafter received moneys from the board of education to which he *353 was not entitled although he did not actually work. Nowhere is there any suggestion that he was capable of working during the time period. The term no-show is a phrase which, in the opinion of the author, characterizes this plaintiff who received unjustified compensation although he had been away from his job for the reasons stated in the article. As such, it is clearly a constitutionally protected expression of opinion.
Summary judgment must therefore be granted on this additional ground.
Furthermore, the article also enjoys a qualified privilege under the common-law “fair comment” doctrine (see, generally, 1 Seelman, The Law of Libel and Slander in the State of New York [rev ed], pars 231-248, pp 282-334; Restatement, Torts 2d, §§ 606-610). Plaintiff has adduced no evidence of common-law malice, which is required to defeat this privilege. Summary judgment would, accordingly, be appropriate on this additional ground as well.
CONCLUSION
The plaintiff has failed to adduce evidentiary facts to extinguish the defendants’ qualified Chapadeau privilege or common-law “fair comment privilege” or to negate the applicability of the absolute opinion privilege which attaches to the publication of the subject article. If applicable and operative, any one of these privileges imbues the defendants with total immunity from defamation liability arising out of the article’s publication. In the instant case, all three are applicable and operative. Plaintiff’s action is therefore not maintainable.
DECISION
The defendants’ motion for summary judgment is therefore granted. The complaint is, accordingly, dismissed. Defendants may enter judgment of dismissal against the plaintiff together with the costs and disbursements of the action.