**Donald J. TRUMP, Plaintiff,**

v.

**CHICAGO TRIBUNE COMPANY and
Paul Gapp, Defendants.**

No. 84 Civ. 6873 (EW).

United States District Court,
S.D. New York.

Sept. 3, 1985.

David Berger, New York City, for plaintiff.

Lawrence Gunnels, Chicago, Ill., Berner & Berner, P.C., New York City (Thomas R. Berner, New York City, of counsel), for defendants.

OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Donald Trump, a New York real estate developer, brings this libel action against the Chicago Tribune Company ("Tribune") and Paul Gapp, an employee of the Tribune whose byline describes him as the Tribune's "architecture critic." Plaintiff's complaint seeks damages based upon statements contained in an article appearing under the heading of "Design" in the Sunday Tribune Magazine of August 12, 1984, in which Gapp discussed Trump's plan to construct the tallest building in the world, a 150-story tower, on a landfill site at the southeast end of Manhattan island.

Plaintiff's complaint alleges that Gapp's criticism of the proposed venture, which was accompanied by a Tribune artist's illustration depicting a building which plaintiff calls "an atrocious, ugly monstrosity" damaged plaintiff's reputation as a developer conscious of aesthetic values and "torpedoed" plaintiff's plans. Defendant moves for dismissal of the complaint under Fed.R. Civ.P. 12(b)(6).

The article published by the Tribune and written by Gapp began with the sentence: "The only remotely appealing aspect of Donald Trump's proposed 150-story Manhattan skyscraper, announced several days ago, is that it would not be done in the Fence Post Style of the 1970s."[1] The following paragraph declared that "the world's tallest tower would be one of the silliest things anyone could inflict on New York or any other city." The piece went on to describe Trump Tower, another development by plaintiff, as a "skyscraper offering condos, office space and a kitschy shopping atrium of blinding flamboyance." Gapp described Trump's proposal for the 1,940-foot building as "Guiness Book of World Records architecture," and characterized as "eyewash" Trump's statement that the new building would architecturally "balance" the two World Trade Center towers on the west side of lower Manhattan.

Plaintiff maintains that these comments were false and defamatory, and alleges in particular that he has chosen no architect and has no plan for his proposed building.

He claims that the Tribune article falsely implies that plaintiff has plans for the building and that Gapp had reviewed them and found them aesthetically displeasing. Plaintiff also asserts a claim based upon remarks by Gapp published in the Wall Street Journal in its Real Estate column of August 29, 1984. Gapp told the Journal's reporter that Trump's proposal was "aesthetically lousy," and that the central part of his own city, Chicago, "has already been loused up by giant-ism."

Defendants, on the other hand, argue that the contents of the Gapp article are entitled to complete immunity under the First Amendment protection of expressions of opinion.

Expressions of "one's opinion of another, however unreasonable or vituperative, since they cannot be subjected to the test of truth or falsity, cannot be held libelous and thus are entitled to absolute immunity from liability under the First Amendment."[2] Opinion may be expressed through "rhetorical hyperbole" and "vigorous epithets,"[3] even in the most pejorative terms, but when the criticism takes the form of accusations of criminal or unethical conduct, or derogation of professional integrity in terms subject to factual verification, the borderline between fact and opinion has been crossed.[4] Whether a statement constitutes fact or opinion is a question of law, and is thus appropriate for resolution on a motion to dismiss.[5]

1. Chicago Tribune, Aug. 12, 1984, § 13, page 8, col. 1.

2. *McManus v. Doubleday & Co.*, 513 F.Supp. 1383, 1385 (S.D.N.Y.1981). *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339, 94 S.Ct. 2997, 3006, 41 L.Ed.2d 789 (1974); *Davis v. Ross*, 754 F.2d 80 (2d Cir.1985); *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir.), *cert. denied*, 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977).

3. *Letter Carriers v. Austin*, 418 U.S. 264, 284, 94 S.Ct. 2770, 2781, 41 L.Ed.2d 745 (1974); *Greenbelt Pub. Assn. v. Bresler*, 398 U.S. 6, 14, 90 S.Ct. 1537, 1541, 26 L.Ed.2d 6 (1970).

4. *See Cianci v. New Times Pub. Co.*, 639 F.2d 54, 63–64 (2d Cir.1980); *Silsdorf v. Levine*, 59 N.Y.2d 8, 462 N.Y.S.2d 822, 449 N.E.2d 716, *cert.*

*denied*, 464 U.S. 831, 104 S.Ct. 109, 78 L.Ed.2d 111 (1983); *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 382, 397 N.Y.S.2d 943, 951, 366 N.E.2d 1299, *cert. denied*, 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977); *Edwards v. National Audubon Soc., Inc.*, 556 F.2d 113, 121–22 (2d Cir.), *cert. denied*, 434 U.S. 1002, 98 S.Ct. 647 (1977).

5. *See Letter Carriers v. Austin*, 418 U.S. 264, 282, 94 S.Ct. 2770, 2780, 41 L.Ed.2d 745 (1974); *Greenbelt Pub. Assn. v. Bresler*, 398 U.S. 6, 11, 90 S.Ct. 1537, 1540, 26 L.Ed.2d 6 (1970); *Hotchner*, 551 F.2d at 913; *Buckley v. Littell*, 539 F.2d 882, 888 (2d Cir.1976), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 777 (1977); *Held v. Pokorny*, 583 F.Supp. 1038 (S.D.N.Y.1984); *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 381, 397 N.Y.S.2d 943, 950, 366 N.E.2d 1299,

■ After a careful review of the record, this court has no doubt that the statements contained in the Tribune article are expressions of opinion. The very presentation of the article in the Sunday Tribune Magazine section, under the heading of the "Design" column, with a byline identifying the author as the Tribune's "Architecture Critic," informs the reader that the article embodies commentary by a Tribune columnist, and is not a news story reporting factual material. From the first sentence, which describes the "only remotely appealing aspect" of the Trump project, the prose is cast in subjective terms; the very words Trump objects to, which refer to the proposal as "one of the silliest things anyone could inflict on New York" and describe the asserted aesthetic balance between the proposed tower and the World Trade Center as "eyewash," convey to the reader the highly personal and subjective nature of the judgments expressed. It must be clear to any reader that in the realm of architecture, as in all aesthetic matters, what is "appealing" to one viewer may be appalling to another.[6] There are many who would disagree with Mr. Gapp's view, also expressed in the Tribune piece, that the World Trade Centers "still stand as two of the most desolately ugly buildings in New York,"[7] but there is no way that the Court could instruct a jury on the process of evaluating whether the statement is true or false as a matter of fact.

The conclusion that the Tribune article embodies opinion rather than fact is also compelled upon examination of those statements classified as opinion in previous court decisions. The Supreme Court has held that describing a real estate developer's negotiating position as "blackmail" was a statement of opinion,[8] as was the charge that workers refusing to join a union had "rotten principles," and "lacked character."[9] Statements by a public official that a board game satirizing the system of public assistance for the poor was "ugly and damaging" and "by its insensitivity and shoddiness [did] a discredit to those associated with its manufacturing and marketing" were protected as opinion by our Court of Appeals,[10] as was a statement calling an author and lecturer a "fellow traveler" of "fascists" and the "radical right."[11] Similarly, this Court has held that it was a protected expression of opinion to call "immoral" a lawyer's decision to exercise his right of election against the will of his deceased wife.[12] The New York courts[13] have held that calling a Judge incompetent, accusing a former director of

cert. denied, 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977).

6. Thus, for example, the Eiffel Tower, one of the most widely recognized and admired structures in the world, was criticized by Guy De Maupassant as

> an unavoidable and tormenting nightmare ... this tall skinny pyramid of iron ladders, this giant and disgraceful skeleton with a base that seems made to support a formidable monument of cyclops and which aborts into the thick, ridiculous profile of a factory chimney.

See J. Harris, *The Tallest Tower: Eiffel and the Belle Epoque* 21 (1975). De Maupassant joined a letter signed by 46 other French artists calling the Tower a "useless and monstrous" "horror." *Id.*

7. Chicago Tribune, Aug. 12, 1984, § 13, page 8 col. 2.

8. *Greenbelt Pub. Assn. v. Bresler,* 398 U.S. 6, 14, 90 S.Ct. 1537, 1541, 26 L.Ed.2d 6 (1970).

9. *Letter Carriers v. Austin,* 418 U.S. 264, 284, 94 S.Ct. 2770, 2781, 41 L.Ed.2d 745 (1974).

10. *Hammerhead Enters., Inc. v. Brezenoff,* 707 F.2d 33 (2d Cir.), *cert. denied,* 464 U.S. 892, 104 S.Ct. 237, 78 L.Ed.2d 228 (1983).

11. *Buckley v. Littell,* 539 F.2d 882, 893–95 (2d Cir.1976), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 777 (1977).

12. *Held v. Pokorny,* 583 F.Supp. 1038 (S.D.N.Y. 1984).

13. The parties in this case have assumed that New York law would apply. Plaintiff is a citizen of New York, the subject of the article was transactions taking place in New York, and New York is the place in which plaintiff claims the damage arising from the publication occurred. Thus, despite the fact that the article was conceived, edited and published in Illinois, the parties' assumption as to choice of law is correct. *See Machleder v. Diaz,* 538 F.Supp. 1364 (S.D.N.Y.1982).

the State Lottery of "gypping" and "systematically cheating" the public, and describing a teacher who had received pay to which he was not entitled while on sick leave as a "no-show" are all expressions of opinion which cannot be the predicate for a defamation action.[14] These cases present claims far more compelling than that advanced by plaintiff here, and each has been found to involve expressions of opinion entitled to full First Amendment protection.

Plaintiff asserts that even if the Tribune article expresses opinion, it is still not entitled to constitutional protection unless the facts supporting the opinion are set forth.[15] Placing principal reliance upon the decision by our Court of Appeals in *Hotchner v. Castillo-Puche*,[16] plaintiff alleges that the article incorrectly implies that defendants had knowledge of facts, unknown to the general public, which substantiate the opinions expressed, that these facts are false, and that the opinions therefore lose their protected character.

Plaintiff correctly characterizes the holdings in *Silsdorf* and *Hotchner,* but their application to the record before the court does not yield plaintiff's conclusion. The facts supporting Mr. Gapp's "speculation" are fully set forth in the article; indeed, the closing section of the article begins with the sentence: "Yet, while this sort of speculation is amusing, it is necessary to add a few hard facts." [17] The matter which follows, concerning the economic constraints on developers seeking to build particularly tall buildings and relying in part on "statistics provided by Trump," is not disputed by the plaintiff. Other facts set forth in the article concerning the Trump proposal include the information

that no architect had been selected and no specific design for the building agreed upon, along with the paragraph:

> In a recent interview, the real estate tycoon said he proposes to build his 1,940-foot building on landfill along the edge of the East River near the southern tip of Manhattan. It would cost $1 billion and house offices on its lower levels, a hotel in the middle and luxury apartments on top.[18]

Plaintiff testified at his deposition that in July 1984, before the publication of the article in question, he was interviewed by a reporter at the New York Times, and at that interview conveyed to the reporter all the information set out in the paragraph quoted above.[19] Thus, it was plaintiff's own statements, conveyed to the press through an interview plaintiff himself arranged, which formed the factual basis of the opinions expressed in the defendants' article. Upon the totality of the record presented, the Court finds that the article set out in full the facts on which the opinions expressed were predicated, and further finds that the truth of those facts is not in dispute, the bulk of the factual material having been provided by the plaintiff.

Plaintiff nonetheless contends that the illustration and caption accompanying the article, which depict a 150-story building drawn to scale against the skyline of lower Manhattan, falsely imply that defendants had access to plaintiff's plan for the building, and he further contends that the building depicted does not accurately portray his plans.

Even if the Court were to accept plaintiff's invitation to take the illustration and

---

14. *Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 380–81, 397 N.Y.S.2d 943, 950–51, 366 N.E.2d 1299, *cert. denied,* 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977); *Bruno v. New York News,* 89 A.D.2d 260, 456 N.Y.S.2d 837 (2d Dept.1982); *DeLuca v. New York News,* 109 Misc.2d 341, 438 N.Y.S.2d 199 (Sup.Ct.1981).

15. *Silsdorf v. Levine,* 59 N.Y.2d 8, 13, 462 N.Y. S.2d 822, 825, 449 N.E.2d 716, *cert denied,* 464 U.S. 831, 104 S.Ct. 109, 78 L.Ed.2d 111 (1983).

16. 551 F.2d 910, 913 (2d Cir.), *cert. denied,* 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977).

17. Chicago Tribune, Aug. 12, 1984, § 13, page 8 col. 4.

18. Chicago Tribune, Aug. 12, 1984, § 13, page 8 col. 1.

19. Transcript of Deposition of Donald J. Trump, Jan. 29, 1985, at 9–15.

caption out of the context of the article as a whole, plaintiff's claim with respect to the illustration must fail. The caption identifies the illustration as the *"artist's conception* of Donald Trump's proposed 150-story skyscraper," [20] and thus makes clear that the illustration, like the article it accompanies, is opinion, not a factual report. In addition, plaintiff's claim with respect to the illustration depends upon his contention that the illustration is not in keeping with his proposal, which he says calls for a "tapered" building on a developed site which would include several smaller buildings and extensive landscaping.[21] At the same time, plaintiff is equally vehement in declaring that he has no plans, and has not even engaged an architect. Thus, plaintiff contends on the one hand that certain details of the project, as for example that he intends a "tapered" building, were misrepresented by the Tribune; on the other hand, he objects to the artist's rendering in the Tribune illustration on the ground that he has no architect and has not yet made any plans. Plaintiff cannot have it both ways.

Moreover, the root of plaintiff's objection to the illustration, and the essence of his allegation that it has a defamatory meaning, is that he finds the building depicted to be "an atrocious, ugly monstrosity." [22] This is, of course, precisely the same sort of individual, subjective aesthetic opinion which defendant Gapp expressed in the article. Plaintiff's negative opinion of the building depicted in the illustration is no more subject to factual proof than are the negative opinions of plaintiff's proposal expressed by defendant Gapp in the article itself. Plaintiff chose to give publicity to his proposal, particularly in granting an interview to a representative of the New York Times. He finds aesthetically unpleasing the terms in which that publicity was interpreted by the defendants here. As this Court has previously said,

> Men in public life, whether they be judges, legislators, [or] executives ... must accept as an incident of their service harsh criticism, ofttimes unfair and unjustified—at times false and defamatory—and this is particularly so when their activities or performance may be the subject of differing attitudes and stir deep controversy.[23]

Plaintiff, having sought publicity for his proposal, finds that defendants do not like his proposed structure. He, on the other hand, does not like their conception any better. The words of the Latin proverb are particularly appropriate here: *De gustibus non est disputandum,* there is no disputing about tastes.[24] The complaint is dismissed.

So ordered.

**20.** Chicago Tribune, Aug. 12, 1984, § 13, page 8, caption (emphasis added).

**21.** The building portrayed by the Tribune artist is in three distinct horizontal segments, set back in a step arrangement, placed on a site which lacks smaller surrounding buildings or visible landscaping. The Tribune explains that the step arrangement is in keeping with the statements made by Trump in the New York Times interview, in which he told the Times reporter that the building would contain offices in its lower part, a hotel in its middle section, and luxury apartments at the top. Transcript of Deposition of Donald J. Trump, Jan. 29, 1985, at 11–12.

**22.** Complaint, para. 12.

**23.** *Adey v. United Action for Animals, Inc.,* 361 F.Supp. 457 (S.D.N.Y.1973), *aff'd,* 493 F.2d 1397 (2d Cir.), *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974).

**24.** *See* B. Evans, *Dictionary of Quotations* 679 (1968).