**Philip D. HELD, Plaintiff,**

v.

**Joel POKORNY, Defendant.**

**83 Civ. 4309.**

United States District Court,
S.D. New York.

April 6, 1984.

Ira B. Pollack, Brooklyn, N.Y., for plaintiff.

Marks & Marks, New York City, for defendant; Charles Z. Abuza, David L. Marks, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, Philip B. Held, an attorney licensed in the State of New York who also is engaged in an insurance business at the same premises where he conducts his law practice, commenced this diversity action against his stepson, Joel Pokorny, charging him with libel.

Plaintiff was married to the defendant's mother from 1968 until her death in March of 1982. Plaintiff exercised his right of election against the will of his deceased

wife.[1] Thereafter, in May 1983, the defendant wrote a letter to plaintiff as follows:

> I am obligated to inform you of the unveiling. My mother was a kind and gentle woman who shared fifteen years of her life with you. Your contravening her wishes is immoral. I request that you do not attend.
>
> Joel Pokorny

Plaintiff's amended complaint alleges two separate causes of action and seeks $1,000,000 in damages under each. The first, which makes no reference to the plaintiff's proceeding for his elective share of his wife's estate, alleges that the defendant's letter is libelous *per se* because it was intended to impute to plaintiff the commission of immoral acts and immoral behavior and thereby to injure his good name, standing, and reputation among his professional and business associates and persons with whom he worked in his legal and business office. The letter had been mailed to plaintiff's office, where it allegedly was published when opened in the ordinary course of business by employees responsible for receiving, sorting, and distributing each day's mail. The letter allegedly was understood by those employees, and by others to whose attention the letter came, to mean that the plaintiff had committed an immoral act, and it allegedly had the effect of inducing an unsavory and evil opinion of plaintiff in the minds of a substantial number of plaintiff's employees and other members of the community.

The second cause of action specifically alleges that plaintiff elected, as authorized under New York law, to institute a proceeding in the Surrogates Court of the State of New York to recover monies due and owing a surviving spouse under the Estates Powers and Trust Law and that the defendant, by the letter referred to in the first cause of action, meant and intended to mean that plaintiff is immoral by virtue of the exercise of his right of election under that law.

The allegedly libelous document makes no reference to plaintiff's professional or business activities. The gist of both causes of action is that plaintiff is referred to as immoral because he contravened his deceased wife's wishes by proceeding to exercise his right of election as a surviving spouse, and the essential element of both claims is that the charge of immorality is libelous *per se*. The defendant moves to dismiss each claim, contending that because the letter merely charged what plaintiff had a legal right to do, it is not libelous and that because the words were not applied to plaintiff's professional or business activities, it does not constitute libel *per se*. The Court agrees and the motion to dismiss the respective causes of action is granted.

The threshhold issue is whether the statement "your contravening her wishes is immoral" is a statement of fact or of opinion. Expressions "of one's opinion of another, however unreasonable or vituperative, since they cannot be subjected to the test of truth or falsity, cannot be held libelous and thus are entitled to absolute immunity from liability under the First Amendment." [2]

Whether a statement constitutes fact or opinion is a question of law for the Court to decide.[3] The boundary line be-

**1.** New York Est. Powers & Trusts § 5–1.1 (McKinney 1981).

**2.** *McManus v. Doubleday & Co.,* 513 F.Supp. 1383, 1385 (S.D.N.Y.1981). *See also Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974); *Hotchner v. Castillo-Puche,* 551 F.2d 910, 913 (2d Cir.), *cert. denied,* 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977); *Buckley v. Littell,* 539 F.2d 882, 893 (2d Cir.1976), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977).

**3.** *Letter Carriers v. Austin,* 418 U.S. 264, 282, 94 S.Ct. 2770, 2780, 41 L.Ed.2d 745 (1974); *Greenbelt Pub. Assn. v. Bresler,* 398 U.S. 6, 11, 90 S.Ct. 1537, 1540, 26 L.Ed.2d 6 (1970); *Hotchner, supra* note 2, at 913; *Buckley, supra* note 2, at 888; *McManus, supra* note 2, at 1385; *Rinaldi v. Holt, Rinehart & Winston, Inc.,* 42 N.Y.2d 369, 381, 397 N.Y.S.2d 943, 950, 366 N.E.2d 1299, 1306 (Ct.A.), *cert. denied,* 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977). *See also, Bose Corp. v. Consumers Union of United States, Inc.,* 692 F.2d 189 (1st Cir.1982), *cert. granted,* — U.S. —, 103 S.Ct. 1872, 76 L.Ed.2d 805 (1983).

tween fact and opinion is not a precise one.[4] In general, "rhetorical hyperbole," and "vigorous epithets" are expressions of opinion,[5] as are "concepts whose content is so debatable, loose and varying, that they are insusceptible to proof of truth or falsity."[6] Accusations of criminal or unethical activity, on the other hand, are expressions of fact,[7] as are allegations relating to one's professional integrity that are susceptible of proof.[8]

■ The Court has no doubt that defendant's statement "your contravening her wishes is immoral" is an expression of opinion. It is hardly different from saying "your contravening her wishes is shocking." Webster's New International Dictionary defines moral as "conforming to a standard of what is good and right; righteous, virtuous."[9] Those concepts are infinitely debatable, and their precise meaning is extremely elusive. As Justice Hunt noted over 100 years ago, the principle of right and wrong, or morality or immorality, is impossible as an element of proof:

> There can be no more uncertain rule of action than that which is furnished by an intention to do right. How or by whom is the right to be ascertained? What is right in a particular case? ... What is or what may be right depends upon

many circumstances. The principle is impracticable as a rule of action to be administered by the courts.[10] Indeed, the Court could not instruct the jury on how to evaluate the truth of a charge of immorality without entering an age old debate better left to philosophers.[11]

Further, the classification of defendant's statement as one of opinion is obvious after an examination of other expressions the courts have classified as opinion. The Supreme Court has held that an article describing a real estate developer's negotiating posture as "blackmail" was opinion, as "the word was no more than rhetorical hyperbole, a vigorous epithet."[12] Similarly, the Court held that an essay charging individuals who had refused to join a union with having "rotten principles," lacking "character," and being a "traitor" was a statement of opinion because the "words were obviously used here in a loose and figurative sense to demonstrate the union's strong disagreement" and were nothing more than a "lusty and imaginative expression of contempt."[13]

Our Court of Appeals has held that describing a game as "ugly and damaging" and stating that "by its insensitivity and plain shoddiness [it] is a discredit to those associated with its manufacturing and mar-

---

4. *Buckley, supra* note 2, at 893.

5. *Letter Carriers, supra* note 3, 418 U.S. at 284, 286, 94 S.Ct. at 2781–82; *Greenbelt, supra* note 3, 398 U.S. at 14, 90 S.Ct. at 1542.

6. *Buckley, supra* note 2, at 894.

7. *Cianci v. New Times Publishing Co.,* 639 F.2d 54, 63–64 (2d Cir.1980); *Silsdorf v. Levine,* 59 N.Y.2d 8, 462 N.Y.S.2d 822, 449 N.E.2d 716 (Ct.A.), *cert. denied,* —— U.S. ——, 104 S.Ct. 109, 78 L.Ed.2d 111 (1983); *Rinaldi, supra* note 3, 42 N.Y.2d at 382, 397 N.Y.S.2d at 951, 366 N.E.2d at 1307.

8. *Edwards v. National Audubon Society, Inc.,* 556 F.2d 113, 121–22 (2d Cir.), *cert. denied,* 434 U.S. 1002, 98 S.Ct. 647, 54 L.Ed.2d 498 (1977); *Buckley, supra* note 2, at 895–97.

9. Immoral is defined as "not moral; inconsistent with rectitude, purity, or good morals; contrary to conscience or moral law; wicked, vicious, licentious."

10. *Allen v. Ferguson,* 85 U.S. 1, 4–5, 21 L.Ed. 854 (1874) (Promise of a debtor to do what is "right" as to his creditors does not revive the debt).

11. *Compare* Jeremy Bentham, *Works,* Vol. X (1830), *reprinted in* Evans, *Dictionary of Quotations,* 281:17 (1968) ("The greatest good to the greatest number is the measure of right and wrong") *with* Alfred North Whitehead, *Dialogues of Alfred North Whitehead* (1953), *reprinted in* Evans, *supra,* at 464:7 ("Morality at any given time or place ... is what the majority then and there happen to like and immorality is what they dislike"). *See also* Ernest Hemingway, *Death in the Afternoon* (1932), *reprinted in* Bartlett, *Familiar Quotations,* 1044b (1968) ("What is moral is what you feel good after and what is immoral is what you feel bad after").

12. *Greenbelt, supra* note 3, 398 U.S. at 14, 90 S.Ct. at 1542.

13. *Letter Carriers, supra* note 3, 418 U.S. at 284, 286, 94 S.Ct. at 2781–82.

keting" expresses opinion,[14] as does calling scientists "liars."[15] Similarly, a book describing an author and lecturer as "a manipulator," a "toady," and a "hypocrite" expresses opinion,[16] as does a statement calling a journalist a "fellow traveler" of "fascists" and the "radical right."[17]

Similarly, the New York Court of Appeals [18] has held that defendants who called a Judge incompetent and stated that he should be removed from office cannot be held liable "for simply expressing their opinion of his judicial performance, no matter how unreasonable, extreme, or erroneous these opinions may be."[19] The New York courts also have held the following to be opinion: an article accusing a former director of the New York State Lottery of "gypping" and "systematically cheating" the public, and of being without conscience;[20] a statement charging that a singer's manager took advantage of the singer and didn't do his job;[21] and a characterization of a teacher who had received pay to which he wasn't entitled while on health leave as a "no-show."[22]

Defendant's charge of immorality is no more susceptible of proof than these expressions that other courts have held to be opinions. Defendant's statement merely expresses his assessment of plaintiff's conduct, and cannot be construed as anything other than opinion.[23]

Plaintiff argues, however, that even if the statement is opinion, it is libelous *per se* because it accuses an attorney of unprofessional conduct.[24] Under New York law, a writing is actionable "without allegation or proof of special damages if it 'tends to disparage a person in the way of his office, his profession, or trade.' "[25] Such statements about attorneys "include those which show lack of character or a total disregard of professional ethics, e.g., statements that indicate an attorney has been disloyal to the best interest of his client or statements that accuse an attorney of unprofessional conduct."[26] Thus, a client's letter accusing an attorney of collaborating with the adverse party and manipulating false documents to the detriment of the

**14.** *Hammerhead Enterprises, Inc. v. Brezenoff,* 707 F.2d 33 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 237, 78 L.Ed.2d 228 (1983).

**15.** *Edwards, supra* note 8, at 121. *Edwards* held that to charge scientists with being "paid to lie," on the other hand, was to express fact. *Id.* at 121–22.

**16.** *Hotchner, supra* note 2, at 912–13.

**17.** *Buckley, supra* note 2, at 893–95. In contrast, comparing the journalist to a proven libeler, stating that he could be taken to court, and charging that he "has been caught out for misquotations," expresses fact. *Id.* at 895–97.

**18.** Both parties based their arguments upon New York law, and apparently assumed that New York law would apply. As plaintiff is a New York citizen, the alleged publication took place in New York, and the injury allegedly occurred in New York, the parties' assumption is correct. *See, e.g., Machleder v. Diaz,* 538 F.Supp. 1364 (S.D.N.Y.1982).

**19.** *Rinaldi, supra* note 3, 42 N.Y.2d at 380–81, 397 N.Y.S.2d at 950–51, 366 N.E.2d at 1306. On the other hand, an assertion that the Judge was "probably corrupt" was held to be a statement of fact. *Id.*

**20.** *Bruno v. New York News,* 89 A.D.2d 260, 456 N.Y.S.2d 837 (3d Dep't 1982).

**21.** *Rand v. New York Times Co.,* 75 A.D.2d 417, 430 N.Y.S.2d 271 (1st Dep't 1980).

**22.** *DeLuca v. New York News, Inc.,* 109 Misc.2d 341, 438 N.Y.S.2d 199 (Sup.Ct.1981).

**23.** The "immunity afforded the expression of opinion obtains only when the facts supporting the opinion are set forth." *Silsdorf, supra* note 7, 59 N.Y.2d at 13, 462 N.Y.S.2d at 825, 449 N.E.2d at 719. Defendant's statement does set forth the facts supporting his charge of immorality: he states that his mother was kind and gentle and shared fifteen years with the plaintiff, and that plaintiff had contravened her wishes.

**24.** *Handelman v. Hustler Magazine,* 469 F.Supp. 1048, 1051 (S.D.N.Y.1978).

**25.** *Tedeschi v. Smith Barney,* 548 F.Supp. 1172, 1175 (S.D.N.Y.1982); *Nichols v. Item Publishers, Inc.,* 309 N.Y. 596, 600, 601, 132 N.E.2d 860, 862 (1956).

**26.** *Wachs v. Winter,* 569 F.Supp. 1438, 1443 (E.D.N.Y.1983); *Tedeschi, supra* note 25.

client's case has been held actionable.[27] Similarly, a statement implying that an attorney has charged an excessive or exorbitant fee is actionable,[28] as is a charge that an attorney is unethical because he is seeking to increase his fees by preventing negotiation or fomenting litigation.[29]

Plaintiff's reliance on these decisions is misplaced. Defendant's letter did not charge plaintiff with a lack of professional integrity or a breach of professional ethics—it charged that plaintiff's decision to "contravene" his wife's wishes on a family matter was immoral, and, as noted above, made no reference to plaintiff as a lawyer or insurance official. Attorneys licensed to practice must "conform not only to standards of ethical conduct generally but also to the professional standards of conduct which from time immemorial have characterized the legal profession."[30] There is no requirement in the legal profession's Code of Professional Ethics, however, that an attorney honor a spouse's wishes regarding the disposition of the spouse's estate, or any other personal matter. Nor is there any requirement that an attorney self-lessly forego the enforcement of his or her legal rights. The fact that one chooses to take his or her elective share rather than abide by a spouse's will reflects no more on a lawyer's professional integrity than it would on a dentist's or teacher's or any other professional's integrity.[31] In short, defendant's statement comments only upon what even plaintiff refers to as a "family squabble" and nei-

ther attacks nor calls into question plaintiff's professional conduct or qualifications.[32]

The motion to dismiss is granted.

So ordered.

27. *Wachs, supra* note 26.

28. *Handelman, supra* note 24; *Sanderson v. Caldwell,* 45 N.Y. 398 (1871).

29. *November v. Time, Inc.,* 13 N.Y.2d 175, 244 N.Y.S.2d 309, 194 N.E.2d 126 (1963); *Kleeberg v. Sipser,* 265 N.Y. 87, 191 N.E. 845 (1934); *Kraushaar v. LaVin,* 181 Misc. 508, 42 N.Y.S.2d 857 (Sup.Ct.1943).

30. *Kraushaar, supra* note 29.

31. *See Nadrowski v. Wazeter,* 29 A.D.2d 741, 286 N.Y.S.2d 904 (1st Dep't 1968), *aff'd,* 23 N.Y.2d 899, 298 N.Y.S.2d 305, 246 N.E.2d 159 (1969). ("Not all words 'spoken in disparagement of a professional man will *ipso facto* be actionable *per se.* Words to be actionable on this ground

must touch the plaintiff in his profession or trade.") *Cf. Rosen v. Brandes,* 105 Misc.2d 506, 432 N.Y.S.2d 597 (Sup.Ct.1980) (Charge that during divorce proceedings plaintiff, an attorney, fraudulently induced his wife to transfer property to him, tends to disparage plaintiff in his profession.)

32. This disposition makes it unnecessary to consider whether a statement tending to disparage a person in his or her profession could be actionable as libel even though it was a statement of opinion. *See, e.g., Wehringer v. Newman,* 60 A.D.2d 385, 391, 400 N.Y.S.2d 533, 537 (1st Dep't 1978); Restatement (Second) of Torts § 566(c) (1981).