OPINION OF THE COURT
David I. Schmidt, J.
Defendants United Federation of Teachers (UFT), UFT President Randi Weingarten and Herbert Michael[1] move pursuant to CPLR 3016 (a) and 3211 (a) (1) and (7) for an order dismissing the plaintiffs complaint on the grounds that plaintiff has failed to set forth the defamatory words complained of with particularity in the complaint; that she has no actionable defamation claim in light of the documentary evidence (i.e., the written resolution and newspaper article at issue); and otherwise fails to state a cause of action.
Background
Plaintiff Gwen Roth has served as principal of the Urban Peace Academy (UPA), a New York City public high school, since July 2001. Michael, a teacher and chapter leader at UPA, was removed from said school on October 29, 2002 and reassigned to another alternative high school by the superintendent; according to the complaint, such action was taken following Roth’s *890 receiving a “plethora” of oral and written complaints concerning Michael’s expressed political opinions, which she turned over to the superintendent’s office.[2]
Roth further alleges that, at an official meeting of the UFT Delegate Assembly held on June 11, 2003 at the Brooklyn Marriott Hotel, a written resolution drafted by Michael was introduced for adoption by the UFT.[3] As to what plaintiff alleges in the complaint to constitute defamatory statements for which she now seeks damages, the following was purportedly stated in the resolution:
(A) that Roth had sent four teachers including the UFT chapter leader and his successor to the alternative superintendent’s office to await investigation of allegations of unprofessional conduct;
(B) that Principal Roth had “removed UFT members from the Urban Peace Academy [sic]”;
(C) that Principal Roth had “use prevarication and intimidation against staff, students, and parents;”
(D) that Principal Roth had “launched an attack on the leadership of the UFT at Urban Peace Academy.”
The complaint goes on to allege that the resolution proposed, among other measures, that the UFT name Roth “Principal from Hell,” and that a mass picket line be held in front of UPA two days later. Plaintiff further alleges that the resolution also named plaintiff as “Satan” and “carried the message that for seven to eight months she had refused to conduct an investigation or bring charges against 2 teachers who had been removed from UPA.”
Plaintiff, in the complaint, goes on to charge that Weingarten, as president of the UFT, as well as the (unnamed) officials of the UFT,
“without investigation, either knowing that the alleged facts were false or with reckless disregard for the truth or falsity of the allegations permitted a *891 vote to be taken and supported this vote. The UFT by this vote adopted the Resolution ... as the UFT’s own official Statement of fact and authorized its publication and circulation.”
In further alleging that the UFT also officially labeled and branded and named plaintiff as the “Principal from Hell,” plaintiff asserts that the UFT also adopted the position that it would support and convene a picket line outside of UPA as a protest against plaintiff.
Plaintiff avers that the resolution was posted and distributed in schools, and was sent to reporters from (unnamed) daily newspapers. It was further allegedly distributed at the demonstration which was purportedly conducted on June 13, 2003, and, as alleged, published in the June 18, 2003 edition of New York Teacher, the official publication of the UFT.
Thus, in her first cause of action, plaintiff alleges, and requests judgment, severally and jointly, for slander, libel and defamation, “including slander per se, libel per se, and defamation per se.” In her second cause of action, she seeks compensation for “exemplary damages” based upon defendants’ intent to cause injury, including physical and mental injury, extreme emotional distress and continuing mental trauma, severe anxiety and pain and suffering.
Parties’ Contentions
Defendants allege that based upon a review of the documentary evidence consisting of the resolution annexed to the motion (but not to the complaint itself), plaintiff has failed to demonstrate that she has an actionable defamation claim, and that in failing to annex a copy of the resolution to her complaint, she has failed to plead with specificity the exact defamatory statements at issue. They further contend that the complaint must be dismissed “against defendant UFT and the individual defendants in their representative capacities because the alleged conduct was not authorized or ratified by each and every single member of the 140,000-plus member UFT,” and that the disputed contents of the resolution represent either statements of constitutionally protected opinion, made within the context of a labor dispute, or are otherwise not actionable at law because the language complained of is not reasonably susceptible of defamatory connotation. Defendants also allege that any statement in the resolution which could be construed as factual is substantially true, and that a qualified privilege attaches to the *892 communication at issue based on the nature of the positions of plaintiff, as principal, and defendant Michael, as union chapter leader, as well as the overall context in which the resolution was distributed and published. They go on to assert that because plaintiff has not pleaded actual malice in the complaint, the qualified privilege defeats any actionable claim for defamation.
In response, plaintiff argues that the allegations contained in her complaint are sufficient to withstand defendants’ dismissal motion at this early stage of the lawsuit. Through her attorney, she asserts that this was “at best a personal complaint from Michael about the action of a district superintendent within his legitimate jurisdiction. It in no way affected the general membership of the UFT and should have been resolved privately and expeditiously.” She avers that at trial, the minutes of the June 11, 2003 UFT Assembly, as well as the published article, will provide the context of the defendants’ defamatory remarks, and that the plaintiff was in fact the UFT’s scapegoat in a labor dispute whose true target was the Mayor of the City of New York and the Chancellor of the Department of Education.
Defendants’ CPLR 3211 (a) (1) Motion
In order to prevail on a motion to dismiss based on documentary evidence pursuant to CPLR 3211 (a) (1), the documents relied upon must definitively dispose of plaintiffs claim (see Bronxville Knolls v Webster Town Ctr., 221 AD2d 248 [1995]). A defendant must show that the documentary evidence upon which the motion is predicated resolves all factual issues as a matter of law (Unadilla Silo Co. v Ernst & Young, 234 AD2d 754 [1996]). In the instant motion, defendants have failed to demonstrate that the resolution upon which they rely and which they contend is a document disposes of all factual issues. Accordingly, the court denies the motion as asserted under said paragraph.
Defendants’ CPLR 3211 (a) (7) Motion
On a motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction (CPLR 3026). The court should accept the facts as alleged in the complaint as true, accord plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (Leon v Martinez, 84 NY2d 83, 87-88 [1994]; see also Morone v Morone, 50 NY2d 481, 484 [1980]; Rovello v Orofino Realty Co., 40 NY2d 633, 634 [1976]).
*893 Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance (see Weiner v Doubleday & Co., 74 NY2d 586 [1989], cert denied 495 US 930 [1990]; Aronson v Wiersma, 65 NY2d 592, 593 [1985]). It is well settled that an opinion cannot form the basis of a claim for defamation, since “expressions of an opinion ‘false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions’ ” (Steinhilber v Alphonse, 68 NY2d 283, 286 [1986], quoting Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 380 [1977], cert denied 434 US 969 [1977]). However, language is actionable if it is a “mixed opinion,” i.e., a statement of opinion implying that it is based upon facts which justify the opinion, but which are unknown to those hearing or reading it (Steinhilber, 68 NY2d at 289-290 [citations omitted]).
The determination of whether a statement constitutes fact or protected opinion has been the subject of considerable analysis and legal evolution in recent years (see generally Gross v New York Times Co., 82 NY2d 146 [1993]). Under either federal or New York law, the dispositive inquiry is “ ‘whether a reasonable [reader] could have concluded that [the articles were] conveying facts about the plaintiff ” (id. at 152, quoting 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130, 139 [1992], cert denied 508 US 910 [1993]). In distinguishing between actionable factual assertions and nonactionable opinion, the court must consider:
“(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact” (Brian v Richardson, 87 NY2d 46, 51 [1995] [internal quotation marks omitted; citations omitted]).
It is also well established that statements that “tend[ ] to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number in the community” are libelous per se (see Tracy v Newsday, Inc., 5 NY2d 134, 135 [1959]). Similarly, it is well settled that words charging a crime or professional incompetence are actionable per se without the need to plead or prove special damages (see, e.g., Chiavarelli v Williams, 256 AD2d 111 *894 [1998]; Kraus v Brandstetter, 167 AD2d 445 [1990]; Ideal Publ. Corp. v Creative Features, 59 AD2d 862 [1977]). Inquiry does not end here, however, since it has been recognized that accusations are actionable when set forth as facts, while other accusations, even of criminality, would not be actionable if the facts on which they are based are fully and accurately set forth and it is clear to the reader or listener that the accusation is merely a personal surmise built upon those facts (see Gross, 82 NY2d at 155 [1993]).
However, before reaching the ultimate question of whether the content of the statements is, in fact, defamatory, the court must resolve certain threshold issues that defendants have raised in support of their motion seeking dismissal of the complaint herein.
Discussion
[1] CPLR 3016 (a) provides that “[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally.” Defendants contend that plaintiff has inaccurately paraphrased the sum and substance of the allegedly defamatory written resolution adopted by the UFT delegates. They annex, as exhibits to their motion, copies of both the resolution and the article contained in the New York Teacher dated June 18, 2003 which referred to the resolution.[4]
It is well settled that:
“The complaint in an action for slander is required to state in haec verba[5] the particular defamatory words claimed to have been uttered by defendants. This requirement is strictly enforced and the exact words must be set forth. Any qualification in the pleading thereof by use of the words ‘to the effect’, ‘substantially’, or words of similar import generally renders the complaint defective” (Gardner v Alexander Rent-A-Car, 28 AD2d 667, 667 [1967]; see also *895 Laiken v American Bank & Trust Co., 34 AD2d 514 [1970]).
Dismissal is required when the complaint paraphrases, rather than pleads with particularity, the actual words used, “such that the actual words [are] not evident from the face of the complaint” (Murganti v Weber, 248 AD2d 208, 208 [1998]; see also Belvision, Inc. v M & G Elecs., 134 AD2d 313, 314 [1987] [“The vague and conclusory allegations that the defendants have made false statements in the electronics jobbers’ community which negatively reflect on the plaintiffs reliability and solvency, do not comport with the minimum requirements of the statute”]).
A comparison of the text of the resolution, supplied by movants, to the language set forth in the complaint supports their position that plaintiff failed to set forth the actual defamatory words allegedly used. In fact, it is unclear from the complaint which statements are considered by plaintiff to be defamatory, since she commingles extracts from the resolution with tangential background information, with allegations based upon information and belief charging knowledge and complicity on the part of Weingarten and the UFT,[6] and with paraphrased language extracted from the resolution itself.[7] Thus, even according plaintiff every possible favorable inference under the analytical standard applicable on a CPLR 3211 dismissal motion, dismissal of the first cause of action should not await disclosure (see Cerick v MTB Bank, 240 AD2d 274 [1997]), and the court dismisses same under the provisions of CPLR 3211 (a) (7).[8]
Additionally, defendants correctly assert that under the holding set forth in Martin v Curran (303 NY 276 [1951]), the complaint must be dismissed as against the UFT and any defendants in their official or representative capacities. Martin *896 involved a libel suit against the officers of the National Maritime Union of America in their representative capacities. In interpreting the application of section 13 of the General Associations Law,[9] the Court of Appeals found that “for better or worse, wisely or otherwise, the Legislature has limited such suits against association officers, whether for breaches of agreements or for tortious wrongs, to cases where the individual liability of every single member can be alleged and proven.” (Id. at 282 [emphasis added].) Thus, Martin has been relied upon by labor unions and other unincorporated associations to dismiss intentional tort claims, and its continued vitality has been acknowledged by the Second Circuit Court of Appeals (see Modeste v Local 1199, Drug, Hosp. & Health Care Empls. Union, RWDSU, AFL-CIO, 850 F Supp 1156 [SD NY 1994], affd 38 F3d 626 [2d Cir 1994] [where a labor union was held not liable for certain unlawful acts of its members, including assault and intentional infliction of emotional distress, absent showing that unlawful acts were authorized or ratified by each member of union as required by New York law]).
Thus, in order to prevail on her claim, plaintiff must demonstrate that the allegedly defamatory statements were authorized or ratified by the entire membership of the UFT (see Building Indus. Fund v Local Union No. 3, Intl. Bhd. of Elec. Workers, AFL-CIO, 992 F Supp 192 [ED NY 1996]). Plaintiff has failed to meet this burden. Moreover, her challenge to Martin’s continued vitality based upon her reliance on People v Newspaper & Mail Deliverers’ Union (250 AD2d 207 [1998]) is unavailing. In that case, the Appellate Division, First Department, rejected an attempt to apply the holding in Martin to a labor union which was charged under section 460.20 of the Penal Law with enterprise corruption, predicated on unlawful acts allegedly committed by its officers, members and agents, including organized crime associates, in connection with newspaper distribution and various racketeering activities. Under the facts before it, the Court expressly disavowed Mar *897 tin’s application, emphasized that Martin involved tort liability rather than criminal liability and, stating that its literal application would frustrate the Legislature’s intent behind its enactment of section 460.20 of the Penal Law, reversed the dismissal of the indictment based upon an erroneous application thereof (id. at 214). Thus, Newspaper & Mail Deliverers’ Union, which involved the imposition of criminal charges, does not cast doubt upon Martin’s continued viability.
Accordingly, both causes of action asserted against defendants are unsustainable.
Moreover, plaintiff has failed to allege an adequate factual basis with regard to her defamation claims sufficient to defeat defendants’ dismissal motion.
As previously discussed, the standard which determines whether a statement is defamatory requires a finding that “it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community” (Golub v Enquirer/Star Group, 89 NY2d 1074, 1076 [1997] [internal quotation marks omitted], quoting Mencher v Chesley, 297 NY 94, 100 [1947]). In this regard, the dispositive question is whether a reasonable person could have concluded that the resolution at issue herein was “conveying facts about the plaintiff’ as opposed to statements of opinion or belief (see 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130, 139 [1992], cert denied 508 US 910 [1993]).
Statements of opinion are absolutely privileged and shielded from claims of defamation under article I, § 8 of the New York State Constitution, no matter how vituperative or unreasonable the opinions may be (see Brian v Richardson, 87 NY2d 46 [1995]; Steinhilber v Alphonse, 68 NY2d 283, 286 [1986], citing Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369, 380 [1977], cert denied 434 US 969 [1977] [“It is a settled rule that expressions of an opinion ‘false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions’ ”]; see also Held v Pokorny, 583 F Supp 1038, 1040 [SD NY 1984]). And, although the boundary line between fact and opinion is not a precise one (Held, 583 F Supp at 1040; Old Dominion Branch No. 496, Natl. Assn. of Letter Carriers, AFL-CIO v Austin, 418 US 264, 282 [1974]), in general, “rhetorical hyperbole” and “vigorous epithet[s]” are expressions of opinion (see Letter Carriers, 418 US at 285), as are “concepts whose content is so debatable, loose and varying, that they are insusceptible to proof of truth or falsity” (Buckley v Littell, 539 *898 F2d 882, 894 [2d Cir 1976]). The essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion (Steinhilber, 68 NY2d at 290; see also Gross, 82 NY2d at 155 [statements that combine facts and opinion “could be regarded as mere hypothesis and therefore not actionable if the facts on which they are based are fully and accurately set forth and it is clear to the reasonable reader or listener that the accusation is merely a personal surmise built upon those facts”]).
In Steinhilber, the Court of Appeals reviewed purportedly defamatory language used during the course of a labor dispute and affirmed the lower court’s dismissal of the lawsuit. The Court noted that the use of exaggerated rhetoric in labor disputes was commonplace and observed that “even apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an ‘audience may anticipate the use of epithets, fiery rhetoric, or hyperbole’ ” (Steinhilber, 68 NY2d at 294 [internal quotation marks omitted]).
Clearly, when viewed in the context in which it was introduced, the subject written resolution is nothing more than the manifestation of a point of view expressed within the (acknowledged) context of a contentious labor dispute involving the reassignment of a recalcitrant teacher to another school. A statement such as “Principal from Hell” or “Satan” is nothing more than exaggerated hyperbole, and statements imputing the plaintiffs use of “prevarication and intimidation against staff,” “launching an attack on the leadership of the UFT,” and engaging “in harassment and assault on the union and its members” would be understood, by the likely readers of the resolution (member teachers of the union who were undoubtedly aware of the often contentious relationships between chapter leaders and school principals), as such (id.).
The remaining statements under attack by plaintiff are likewise nonactionable. Since plaintiff does not challenge any assertion that she was in some way instrumental in triggering the chain of events that led to Michael’s removal by the superintendent, she has failed to demonstrate that any statement regarding her sending teachers to the superintendent’s office to await investigation is not “substantially true” and thus not *899 subject to actionable defamation (see Armstrong v Simon & Schuster, 85 NY2d 373 [1995]; Carter v Visconti, 233 AD2d 473 [1996]). Finally, while the resolution charges delays in conducting investigations or hearings attendant upon the superintendent alleging “unprofessional conduct,” it does not, either directly, or by implication, attribute such delays to plaintiff (see Armstrong, 85 NY2d at 373).
Finally, the record supports a finding that the statements at issue must be afforded a qualified privilege.
Public policy mandates that certain communications, although defamatory, cannot serve as the basis for the imposition of liability in a defamation action (Shenkman v O’Malley, 2 AD2d 567, 572 [1956]; Restatement [Second] of Torts § 584 et seq.; Prosser, Torts § 114 [4th ed]; 35 NY Jur, Libel and Slander § 91). Communications falling within this category are deemed privileged, either absolutely or qualifiedly (see Shenkman v O’Malley, 2 AD2d 567, 572 [1956]; 35 NY Jur, Libel and Slander § 91). Communications afforded an absolute privilege are perhaps more appropriately thought of as cloaked with an immunity, rather than a privilege, against the imposition of liability in a defamation action (see Toker v Pollak, 44 NY2d 211, 219 [1978]). “In general, its protective shield has been granted only to those individuals participating in a public function, such as judicial, legislative, or executive proceedings” (id. at 219 [citations omitted]).
In contrast, communications protected by a qualified privilege do not provide the communicant with an immunity against the imposition of liability in a defamation action. A qualified privilege does, however, negate any presumption of implied malice flowing from a defamatory statement, and places the burden of proof on this issue upon the plaintiff (id., citing Lovell Co. v Houghton, 116 NY 520, 525 [1889]; Doyle v Clauss, 190 App Div 838, 842 [1920]). A communication is said to be qualifiedly privileged where it “is fairly made by a person in the discharge of some public or private duty, legal or moral, or in the conduct of his own affairs, in a matter where his interest is concerned” (44 NY2d at 219, citing Lovell Co. v Houghton, 116 NY at 526). It arises when a person makes a bona fide communication upon a subject in which he or she has an interest, or a legal, moral, or social duty to speak, and the communication is made to a person having a corresponding interest or duty (Paskiewicz v National Assn. for Advancement of Colored People, 216 AD2d 550, 551 [1995], citing Lee v City of Rochester, 195 AD2d 1000 [1993]; *900 Santavicca v City of Yonkers, 132 AD2d 656 [1987]). Once a qualified privilege is shown to exist, the burden of proof shifts to the plaintiff to offer evidentiary facts to establish that the communication was made in bad faith and was motivated solely by malice (see Liberman v Gelstein, 80 NY2d 429 [1992]; Kamerman v Kolt, 210 AD2d 454 [1994]; Santavicca v City of Yonkers, 132 AD2d 656 [1987]). In the context of defamation, actual malice is defined as personal spite or ill will or culpable recklessness requiring a showing that such spite or ill will was the only cause for publication (see Shapiro v Health Ins. Plan of Greater N.Y., 7 NY2d 56, 60-61 [1959]; Stukuls v State of New York, 42 NY2d 272, 282 [1977]). Mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the claim of qualified privilege (see Paskiewicz, 216 AD2d at 551 [1995]; Kamerman v Kolt, 210 AD2d 454 [1994]; Hollander v Cayton, 145 AD2d 605 [1988]).
Thus, even if the statements in the resolution were found to be defamatory as a matter of law, they cannot become the basis for an action in libel or slander since they are protected by the common-interest qualified privilege doctrine (see Foster v Churchill, 87 NY2d 744 [1996]). It is clear that the instant resolution was written and published in furtherance of the common interest shared by Michael and his intended audience of fellow members of the UFT with respect to what was legitimately contended to be an issue of supervisory overreaching. While plaintiff has clearly shown the existence of animosity in her relationship with Michael, she has not demonstrated that the resolution was introduced and published by defendants solely out of spite or ill will.
In view of the foregoing, the court grants the defendants’ motion in all respects and dismisses the complaint.

. Although defendant is named in the caption as “Michaels,” he states that his surname is in fact “Michael.” Accordingly, except when quoting directly from documents prepared by plaintiff, the court will refer to him by his correct name.

. In her rambling verified complaint, plaintiff alleges that Michael led a small cadre of teachers who opposed Roth’s attempt to impose order on what she characterizes as a “troubled, unproductive and failing school.” She further charges that Michael was a UFT dissident who distributed leaflets condemning Weingarten and the UFT leadership, and called for demonstrations against Weingarten.

. Although he had been removed from UPA some seven months prior to the meeting, the resolution identified Michael as the UFT chapter leader and a UFT delegate of UPA.

. In discussing the various resolutions approved by the Delegate Assembly, the article stated, “. . . [t]he second [resolution approved by the delegates] was to name Gwen Roth of Urban Peace Academy ‘a principal from hell’ for her ‘prevarication against staff, students and parents.’ ” Said article is silent on whether such vote constituted the UFT’s official position, as well as on whether it or defendant Weingarten endorsed the holding of a demonstration at UPA.

. “In these same words; verbatim” (Black’s Law Dictionary 786 [7th ed 1999]).

. Paragraph 21 states that “[t]he UFT also officially labeled and branded and named Roth as the Principal from Hell.”

. Paragraph 19 states that “[t]he said resolution also named plaintiff Roth as ‘SATAN,’ and carried the message that for seven to eight months she had refused to conduct an investigation or bring charges against 2 teachers who had been removed from UPA” (emphasis added).

. The court denies defendants’ motion to dismiss as asserted under CPLR 3211 (a) (1). In order to prevail on a motion to dismiss based on documentary evidence pursuant to CPLR 3211 (a) (1), the documents relied upon must definitively dispose of plaintiffs claim (Bronxville Knolls v Webster Town Ctr., 221 AD2d 248 [1995]). Defendants have failed to demonstrate that the documentary evidence upon which the motion is predicated resolves all factual issues as a matter of law (Unadilla Silo Co. v Ernst & Young, 234 AD2d 754 [1996]).

. Section 13 of the General Associations Law states, in relevant part, that “[a]n action or special proceeding may be maintained, against the president or treasurer of such an association, to recover any property, or upon any cause of action, for or upon which the plaintiff may maintain such an action or special proceeding, against all the associates, by reason of their interest or ownership, or claim of ownership therein, either jointly or in common, or their liability therefor, either jointly or severally. Any partnership, or other company of persons, which has a president or treasurer, is deemed an association within the meaning of this section.” (Emphasis added.)